**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**R. MILLER ARCHITECTURE,**
**INC.,** a Florida corporation,

      **Plaintiff,**

**vs.**                                                              **Case No. 6:06-cv-871-Orl-19DAB**

**EDGINGTON ENTERPRISES,**
**INC.,** a Florida corporation,
**EDGINGTON CONSTRUCTION**
**CO.,** d/b/a **EDGINGTON**
**ENTERPRISES, INC., PHILIP A.**
**EDGINGTON, ANDREA C.**
**EDGINGTON, ADAM EDGINGTON,**
**LAUREN EDGINGTON, LILDON**
**ENGINEERING CO., INC.,** a Florida
corporation, and **WAYNE BLOCK,**

      **Defendants.**

---

**ORDER**

This case comes before the Court on the following:

1.    Edgingtons' Motion to Dismiss/Summary Judgment Plaintiff's

Corrected Second Amended Complaint and Memorandum of Law and

Motion for Attorneys Fees, filed by Defendants Edgington Enterprises,

Inc., Edgington Construction Co. d/b/a Edgington Enterprises, Inc.,

Philip A. Edgington, Andrea C. Edgington, Adam Edgington, and

Lauren Edgington (collectively referred to as "Edgington") on

November 20, 2006; (Doc. No. 80); and

2.      Plaintiff's Opposition to the Edgington Defendants' Motion to Dismiss/Summary Judgment as to Plaintiff's Second Amended Complaint, filed by Plaintiff R. Miller Architecture, Inc. on December 1, 2006.  (Doc. No. 85).

## Background

The following allegations are taken from Plaintiff's Second Amended Complaint.  (Doc. No. 72).

The instant lawsuit arises out of continued use by the Edgington Defendants of architectural plans authored by Plaintiff R. Miller Architecture, Inc. ("Miller")[1] in constructing a 158-unit residential townhouse community in Clermont, Florida.  (*See* Doc. No. 72, ¶ 15). Miller alleges that in August of 1999, Edgington Enterprises, Inc. hired Miller to prepare designs and do other architectural work for a project entitled the "Clermont Yacht Club," a residential community Defendant was constructing in Clermont, Florida.  (*See id.* at ¶¶ 15-16).  At that time, Robert Miller, the principal of Miller, and Philip Edgington, the principal of Edgington, were friends who had worked together on a previous project, and thus the agreement between them for work on the Clermont Yacht Club was an informal

---

[1]      A review of the record demonstrates that during the time period in question, Robert Miller operated a sole proprietorship by the name of "R. Miller Architecture," which apparently was later incorporated into the current Plaintiff, R. Miller Architecture, Inc.  As Robert Miller is the principal of both organizations, and as the sole proprietorship has assigned its interest in the copyrighted designs to the current Plaintiff, the Court will refer to both organizations as "Miller" for purposes of simplicity.  (*See, e.g.,* Doc. No. 1-15, 1-16, filed on June 26, 2006).

arrangement not reduced to writing.  (*See id.* at ¶¶ 15-16, 18).  Between August 1999 and

June of 2001, Miller provided a variety of services to Edgington, including but not limited

to planning, development, document review, and the authoring of various designs and roof

elevations with the intention that Edgington use the designs in the Clermont Yacht Club

project.  (*See id.* at ¶¶ 17-19).

In April of 2000, Edgington notified Miller that its fees were exceeding Edgington's

budget and asked Miller to provide an estimate of future fees.  (*See id.* at ¶¶ 22-23).  On May

5, 2000, Miller faxed Edgington a "fee study" which included fees for the preparation of

plans for all designs and all roof elevations supported by industry standards.  (*See id.* at ¶¶

23-24).  In May of 2000, the parties met and discussed Miller's services.  This is reflected

by the meeting minutes prepared by Robert Miller after a May 15, 2000 meeting in which

the parties agreed on a future course of action.  First, the parties allegedly agreed that

Edgington was going to attempt to get building permits based on Miller's previously-

completed standard-unit plans and the site plan.  Next, Edgington retained Miller in order

to finish building several model townhomes so future permits would be easier to obtain.

After this, the parties agreed that Edgington "would call RMA [Miller] on an as-needed basis

to get permits."  (*See id*. at ¶ 25; Doc. No. 72-2, pp. 18-19).  Miller contends that it was clear

from the language drawn from the meeting minutes that Miller "would be consulted and

would perform additional services in the future to address the issues involved in constructing

the remaining townhouse units and other structures in the Clermont Yacht Club."  (Doc. No.

72, ¶ 25).  Miller further avers that based on its architectural fee study, Edgington understood

that it was responsible for paying Miller over $1 million for its involvement in preparing the

architectural design work necessary to complete the remaining townhomes. (*See id*. at ¶ 29).

It was also in May of 2000 that Edgington allegedly began to experience severe financial troubles regarding the Clermont Yacht Club project. As a result, Edgington began making partial payments to Miller for "a month or two" before stopping payments altogether by July of 2000. (*See id*. at ¶ 26). After completing construction drawings for the first five-unit townhouse building in June of 2000, Miller informally suspended its services and performed only minimal work for the next year. (*See, e.g., id.* at ¶¶ 26-27).

Miller alleges that after it disassociated itself from the Clermont Yacht Club project in mid-2000, Edgington entered into an unlawful scheme to misappropriate Miller's design work in order to be able to continue using its designs without having to pay Miller or another architect the fees which it likely knew it would have to pay after Miller submitted its fee study. (*See id*. at ¶¶ 30-31). The scheme allegedly called for co-Defendants Lildon Engineering and Wayne Block to sign, seal, and reproduce Miller's plans without Miller's consent, including some with derivative changes made to them in order to lower Edgington's development and construction fees. (*See, e.g., id*.; *see also id.* at ¶¶ 33-34). Miller argues that not only do these acts constitute illegal "plan stamping" and copyright infringement, but also they expose Miller as architect of record to potential future lawsuits and claims by third parties. (*See id.* at ¶ 31-33, 36). Miller further avers that Edgington's use of Miller's name as architect of record on building permit applications, and its subsequent use of another architect's name on Miller's altered plans on building permits from September 2004 until the present, present additional instances of Edgington's knowledge that Miller was not properly associated with the project.

After further correspondence with Edgington did not resolve the issue, Miller filed the instant lawsuit on June 26, 2006. (*See generally* Doc. No. 1). In its Second Amended Complaint, Miller alleges that Defendants' conduct amounts to two counts of copyright infringement, a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and a violation of the federal Lanham Act. (*See generally* Doc. No. 72). Edgington now seeks dismissal of the Second Amended Complaint, arguing that Miller's FDUTPA claim is preempted by the Copyright Act and that dismissal should be granted on all four counts of the Second Amended Complaint. (*See generally* Doc. No. 80). Miller responds that all four counts of the Second Amended Complaint state a cause of action. (*See generally* Doc. No. 85).

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached to it as exhibits. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## Analysis

### A.  Federal Rule of Civil Procedure 12(b)

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  However, when considering a motion to dismiss, the court has the discretion under Federal Rule of Civil Procedure 12(b) to decide whether it will accept materials outside the pleadings and convert the motion to dismiss into one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998); *Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 302 (8th Cir. 1993).  A decision whether to convert a motion to dismiss into a motion for summary judgment rests solely within the wide discretion of the trial court.  *See Skyberg*, 5 F.3d at 302, n. 2; *EEOC v. Reno*, 758 F.2d 581, 583 n. 6 (11th Cir. 1985).

Although Edgington styles its Motion as a "Motion to Dismiss/Summary Judgment" and both parties in this case devote small portions of their written arguments to discussing additional facts not found in the Second Amended Complaint, the Court will not exercise its discretion to convert Edgington's Motion into a motion for summary judgment.  The written submissions of the parties make clear that neither party intended to have their arguments address a Rule 56 motion for summary judgment.[2]  Furthermore, neither party has been

---

[2]     Edgington does not submit any affidavits, declarations, or evidence with its Motion, and Miller appears to oppose the conversion of the instant motion into a motion for summary judgment.  *See* Doc. No. 85, pp. 8-9 (stating, in opposition to Edgington's motion, that discovery has not been completed and citing case law stating that the party opposing a motion for summary judgment should be

given an adequate opportunity to present all material made pertinent to a summary judgment

motion under Rule 56.  Fed. R. Civ. P. 12(b); *see also Snook v. Trust Co. of Georgia, Bank*

*of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988) ("[S]ummary judgment should not be

granted until the party opposing the motion has had an adequate opportunity for discovery.").

Thus, the Court will not accept any matters outside the pleading presented by either party

in limiting its consideration of the motion to dismiss.  *See, e.g., Blum v. Morgan Guaranty*

*Trust Co. of N.Y.*, 709 F.2d 1463, 1466 (11th Cir. 1983) (stating that a motion for summary

judgment made solely on the basis of the complaint should be treated as a functional

equivalent of a 12(b)(6) motion, taking the facts alleged as true).

### B.  Edgington's Motion to Dismiss

### 1.  Copyright Infringement

Counts I and II of the Second Amended Complaint assert claims against Edgington

for copyright infringement in its allegedly unlawful use of the plans in constructing the

townhouse units and the clubhouse for the Clermont Yacht Club.  (*See* Doc. No. 72, pp. 17-

22).  Edgington argues that such counts must be dismissed for failure to state a claim because

it had an implied, nonexclusive license to use the designs and drawings, its modification of

the plans was within the scope of the license, and Miller has waived its right to sue for

copyright infringement.  Taking the allegations of the Complaint as true, and accepting all

reasonable inferences therefrom, the Court finds that Miller has stated a claim for copyright

infringement in both Count I and Count II of the Complaint.

---

permitted an opportunity to complete discovery prior to consideration of a motion
for summary judgment).

To assert a claim for copyright infringement, a plaintiff must allege 1) the ownership of a valid copyright by the plaintiff; and 2) the copying of the original, constituent elements of the work by the defendant. *See* 17 U.S.C. §§ 501 et seq; *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Only the copying of original things which "owe their origin" to the plaintiff are actionable; the originality requirement rules out protecting things as to which, by no stretch of the imagination, the plaintiff could be called the author. *Id*. (citations omitted). Hence, copyright protection does not encompass general concepts or "standard features." *John Alden Homes, Inc. v. Kangas,* 142 F.Supp.2d 1338, 1343 (M.D. Fla. 2001); *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992). The Eleventh Circuit has consistently held that original floor plans and construction drawings for homes can be protected under the copyright laws. *E.g., Imperial Residential Design, Inc. v. Palms Dev. Group, Inc*., 70 F.3d 96 (11th Cir.1995).

In the instant case Edgington does not dispute that Miller has adequately pled facts which, if true, demonstrate that Edgington copied Miller's copyrighted works. However, Edgington argues that the allegations of the complaint demonstrate that Miller granted Edgington an implied, nonexclusive license to use the designs and drawings in the manner alleged by Miller. (*See* Doc. No. 80, pp. 7-9). Edgington further argues that in granting such license, Miller waived its right to sue for copyright infringement. The existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement. *See Home Design Serv., Inc. v. Hibiscus Homes of Fla., Inc.*, Case No. 6-03-cv-1860-Orl-19KRS, 2005 WL 3445522, at *12 (M.D. Fla. Dec. 14, 2005); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir.1996).

While the allegations of the Complaint do demonstrate that Miller impliedly granted Edgington the right to use its designs in some respect with regard to the Clermont Yacht Club project, Edgington is incorrect in its contention that such allegations demonstrate the existence of such a broad license.  To the contrary, Plaintiff's Second Amended Complaint avers that Edgington's conduct exceeded the scope of any implied license to use Miller's work.  (*See, e.g.,* Doc. No. 72, ¶¶ 52, 56, 62).  A licensor may still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license.  *See, e.g., MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991).  Thus, the Court denies the motion to dismiss Counts I and II of the Complaint.

### 2.  Florida Deceptive and Unfair Trade Practices Act

Count III of the Complaint alleges that Edgington's conduct violates the Florida Deceptive and Unfair Trade Practices Act. ("FDUTPA").  Edgington argues that Miller fails to state a claim for a violation of the FDUTPA because the Copyright Act preempts Miller's FDUTPA claim, and that under the FDUTPA, Miller cannot recover for any damages or receive any relief for conduct occurring before July of 2001.

First, the Court cannot conclude at this early stage of the litigation that Plaintiff's FDUTPA claim is pre-empted by the Copyright Act.  The United States Court of Appeals for the Eleventh Circuit has employed a two-part test to be applied in copyright preemption cases.  Preemption occurs if the rights at issue 1) "fall within the subject matter of copyright set forth in sections 102 and 103" and 2) "are equivalent to the exclusive rights of section 106." *See Crow v. Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983) (internal quotation

marks omitted).  The second prong of this analysis employs an "extra element" test.  "If an extra element is required instead of or in addition to the acts of reproduction, performance, distribution, or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption."  *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001).  A state law claim is not preempted if a court finds that the "extra element" changes the nature of the action so that it is "qualitatively different" from a claim of copyright infringement.  *Id*.

Taking the allegations of the Complaint as true and accepting all reasonable inferences therefrom, the second prong of the extra element test has not been met.  In Count III of the Complaint, Plaintiff does not allege that its FDUTPA claim arises from the Defendants' unlawful copying of its works, but rather from the deceptive misuse of Miller's name in submitting altered designs that Miller had not created, reviewed, or sealed to the Lake County building department and by misrepresenting that no changes had been made that were contrary to the original master plan.  (*See* Doc. No. 72, ¶¶ 69-71).  Plaintiff further alleges that these acts will cause confusion and damage and subject it to potential liability in the future.  (*See, e.g.,* id. at ¶¶ 36, 66, 73).  Although the Court's independent research has not produced an Eleventh Circuit case directly discussing whether FDUTPA is preempted by the Copyright Act, on several occasions courts within the Eleventh Circuit have reasoned that claims involving allegations of "passing off," which occurs when one "passes off" the goods or services of one as those of another, are not preempted by copyright law, because they create additional risks, such as confusion in the marketplace.  *See, e.g., Donald Frederick Evans & Assoc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986)

(passing off claim not preempted); *Law Bulletin Publishing v. LRP Publications, Inc.,* Case No. 98-8122-CIV, 1998 WL 1969648, at *4-*6 (S.D. Fla. 1998) (distinguishing "passing off" claims, which are generally not preempted, from "reverse passing off" claim, which was pre-empted); *Treiber v. StorCOMM, Inc.*, Case No. 3:03-cv-1040-J-32MMH, 2005 U.S. Dist. LEXIS 42658, at *12 (M.D. Fla. Aug. 16, 2005) (unfair competition claim involving "passing off" not preempted).

Thus, because Miller alleges that Edgington's deceptive and unfair plan-stamping will cause it additional damage, including confusion and potential liability, it has distinguished its FDUTPA claim from its copyright claim.  While it is not entirely clear at this stage that the allegations of its FDUTPA claim are materially different in substance than the copyright claims, given the Eleventh Circuit precedent and the liberal pleading standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), [it appears that Plaintiff has sufficiently pled an "extra element."  *Treiber*, 2005 U.S. Dist. LEXIS at *12.

Next, the court finds that Miller has stated a claim for relief under the FDUTPA but is precluded from seeking monetary damages for any alleged deceptive and unfair trade practices occurring before July 1, 2001.  The FDUTPA broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce.  § 501.204(1), Fla. Stat. (2006).  Section 501.211 provides that any person who has suffered a loss as a result of such practices may commence a private action for actual damages and possibly attorneys' fees and court costs.  § 501.211(2), Fla. Stat. (2006).  The Florida Supreme Court has emphasized that the remedies of the FDUTPA "are in addition" to other

remedies available under state or local law.  *Pinellas County Department of Consumer Affairs v. Castle*, 392 So.2d 1292, 1293 (Fla.1980).  A practice is unfair under the FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Suris v. Gilmore Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3d DCA 1995).  A complaint under the FDUTPA must plead only 1) that the conduct complained of was unfair or deceptive, and 2) that the plaintiff was damaged by such unfair or deceptive conduct.  *See, e.g., Haun v. Don Mealy Imports, Inc.*, 285 F.Supp.2d 1297 (M.D. Fla. 2003).  The Florida Supreme Court has recently held that the statute "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract."  *PNR, Inc. v. Beacon Prop. Mgt. Inc.,* 842 So. 2d 773, 777 (Fla. 2003).

Prior to July 1, 2001, the FDUTPA provided that "[i]n any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs."  § 501.211(2), Fla. Stat. (2000) (emphasis added).   However, the FDUTPA was amended in 2001, and the amendment replaced the word "consumer" with the word "person."  The current version of the FDUTPA provides that "[i]n any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs."  § 501.211(2), Fla. Stat. (2006) (emphasis added).  This amendment demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of the FDUTPA to seek damages, not just injunctive relief.  *See, e.g., Advanced Protection Tech., Inc. v. Square D Co.*, 390 F.Supp.2d 1155, 1164 (M.D. Fla.

2005); *Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540, at *4 (N.D. Fla. Mar. 15, 2002).  "With the deletion of *consumer transaction* from FDUTPA, it would seem that such business entity *consumers* could sue for damages from outlawed acts and practices in ordinary business transactions without regard to whether the claimant was acting in the capacity of consuming goods or services.  At least, nothing in section 501.211(2) purports to state otherwise."  *Beacon Prop. Mgt., Inc. v. PNR, Inc.*, 890 So. 2d 274, 278 (Fla. 4th DCA 2004) (emphasis in original).

After the amendments to the FDUTPA, courts have opined on several occasions that complaints alleging a cause of action under the statute could be sustained absent the failure to allege that the FDUTPA violation arose from a "consumer transaction."  *See, e.g., Gritzke,* 2002 WL 32107540 at *4 (§ 501.211(2), as amended, merely requires a "person" who "has been damaged by [a] defendant's violation" of the statute);  *Niles Audio Corp. v. OEM Systems Co., Inc.*, 174 F.Supp.2d 1315, 1319-20 (S.D. Fla. 2001) (concluding that legislature's replacement of the word "consumer" with the word "person" in § 501.211(2) was intended to make damages remedy available to anyone aggrieved by violation of statute); *see also Beacon Property*, 890 So. 2d at 278 (rejecting the per se argument that a judgment was erroneous "simply because the facts at trial do not involve a consumer transaction").  This Court has recently held that the 2001 amendments to the FDUTPA allow a plaintiff to seek damages despite a failure to allege that the unfair and deceptive conduct arose from a "consumer transaction."  *See True Title, Inc. v. Blanchard*, Case No. 6:06-cv-1871-Orl-19DAB, 2006 U.S. Dist. LEXIS 95069, at *10 (M.D. Fla. Feb. 5, 2006).

In the case at bar, Edgington first alleges that Miller is precluded from asserting any

-13-

of its FDUTPA claims that accrued prior to July 1, 2001 because Miller is not a "consumer"

as defined under the prior version of the FDUTPA.  Initially, the Court notes that Edgington

is correct in its contention that the amendment to the FDUTPA cannot be applied

retroactively.  *See, e.g., Guyana Tel. & Tel. Co., Ltd. v. Melbourne Int'l Communications,*

*Ltd.,* 329 F.3d 1241, 1247 (11th Cir.2003).  However, even the pre-2001 version of the

FDUTPA did not limit the right to sue merely to "consumers."  Prior to July 1, 2001, Section

501.211 of FDUTPA provided:

> (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.
> (2) In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages.

§ 501.211, Fla. Stat. (2000).  Based on the plain language of this version of the statute, courts

have determined that competitors could seek declaratory relief under § 501.211(1), but that

only consumers could seek damages under § 501.211(2).  *See, e.g., Big Tomato v. Tasty*

*Concepts, Inc.*, 972 F.Supp. 662, 664 (S.D. Fla.1997); *Klinger v. Weekly World News, Inc.*,

747 F.Supp. 1477, 1480 (S.D. Fla.1990) ("Without modifying any language, the plain

language of [§ 502.211(1)] includes a broader class of complainants than merely

'consumers'").  Accordingly, the law is clear that Miller, even as a competitor, has stated a

cause of action under § 501.211(1) for declaratory and injunctive relief.

However, the law is equally clear that Miller may not maintain a claim for monetary

damages for any alleged unfair and deceptive practice which accrued prior to July 1, 2001

because Miller is not a "consumer" under the prior version of the statute.  "Although the

-14-

definition of 'consumer' may include corporations and other business associations, Florida courts have focused on the capacity in which a given entity was acting in determining whether the entity qualified as a 'consumer' and as such could seek monetary damages under the FDUTPA." *See Guyana*, 329 F.3d at 1246 (internal quotation marks omitted). In the cases of *Warren Technology, Inc. v. Hines Interests Limited Partnership*, 733 So.2d 1146 (Fla.3d DCA1999), and *N.G.L. Travel Associates v. Celebrity Cruises, Inc.*, 764 So.2d 672 (Fla.3d DCA 2000), Florida courts have instructed that corporations could not bring suit under the 1993 version of the FDUTPA when they had acted as suppliers or producers rather than as "consumers" for the transactions in question. "Even though the 1993 amendments expanded the law's protection to both 'the consuming public at large' and 'legitimate business enterprises,' the language of the statute still only permitted 'consumers' to bring actions seeking monetary relief." *See* § 501.211(2), Fla. Stat. (2000); *Guyana*, 329 F.3d at 1247. The complaint in the instant case alleges that Edgington's unlawful conduct began sometime in 2001 and continued until 2006. (*See* Doc. No. 72, ¶¶ 30, 40). Thus, Miller has stated a claim for relief under the FDUTPA but is barred from seeking monetary damages for any alleged deceptive and unfair trade practices occurring before July 1, 2001.

### 3. Lanham Act

Count IV of the Complaint alleges that Edgington's conduct constitutes unfair competition under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Edgington does not argue that Miller fails to state a claim under the Lanham Act; rather, it argues that Miller's Lanham Act claim overlaps its Copyright Act claim and thus should be dismissed. Taking the allegations of the Complaint as true, and accepting all reasonable inferences

therefrom, the Court finds that Plaintiff's Lanham Act claim should not be dismissed at this time.

Although, generally speaking, a federal statute cannot be preempted by another federal statute, the Supreme Court has been "careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29 (2001)). For this reason, courts have sometimes dismissed Lanham Act claims where the copyright laws provided an adequate remedy. The legal standard for unfair competition under both the Lanham Act and common law is substantially similar. *See, e.g., Chanel, Inc., v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 (11th Cir. 1991). In common law unfair competition cases, Eleventh Circuit has held that "[a] claim for unfair competition based upon allegations of copying, and in the absence of proof of any element of unfair competition other than copying, is clearly pre-empted by the [Copyright] Act." *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990).

In the instant case, Edgington's argument fails for reasons similar to its argument that Miller's FDUTPA claim is preempted. In Count IV of the Complaint, Miller avers that Plaintiff's misuse and unauthorized use of Miller's *name and designs* creates the likelihood that consumers will be confused, deceived, and misled as to the source, affiliation, and sponsorship of Defendants' products and services. (Doc. No. 72, ¶¶ 76-77) (italics added). Miller avers first that by the unauthorized use of its name, consumers will wrongly believe Miller is affiliated with structures created with unlawfully altered designs, and secondly, that

consumers will mistakenly conclude that Miller is not the creator of the clubhouse in the

Clermont Yacht Club which was copied from Miller's copyrighted works.  (*See id.*).

Plaintiff's allegations of deceptive or fraudulent conduct and a likelihood of consumer

confusion sufficiently separate such claim from its discrete Copyright Act claim.  *See, e.g.,*

*M.G.B.*, 903 F.2d at 1494-95.  This is because  "passing off" type claims such as Miller's

create an additional danger that an individual may believe that the passed off good or service

is that of Plaintiff, and thus unfairly attribute any deficiency in the good or service to

Plaintiff. *See Law Bulletin*, 1998 WL at *4.  Hence, applying Eleventh Circuit precedent and

the liberal pleading standards applicable to a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), the Court will deny the motion to dismiss Count IV.  While the Counts

of the Second Amended Complaint may be related, it has not yet demonstrated that they are

preempted by federal law.

### Conclusion

Based on the foregoing, the Motion to Dismiss/Summary Judgment Plaintiff's

Corrected Second Amended Complaint and Memorandum of Law and Motion for

Attorneys Fees, filed by Defendants Edgington Enterprises, Inc., Edgington

Construction Co. d/b/a Edgington Enterprises, Inc., Philip A. Edgington, Andrea C.

Edgington, Adam Edgington, and Lauren Edgington on November 20, 2006, (Doc.

No. 80), is **GRANTED in part and DENIED in part**, in the following respects:

1.    The claim for monetary damages for unfair and deceptive business

      practices occurring before July 1, 2001 contained in Count III of the

      Second Amended Complaint is **DISMISSED**;

2.      In all other respects, the Motion is **DENIED**.

Plaintiff R. Miller Architecture, Inc. shall have ten (10) days from the date of this

Order to file an Amended Complaint that comports with this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this 12th  day of February, 2006.

```
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT
```

Copies furnished to:

Counsel of Record